November 6, 2023 10:07 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: EOD   SCANNED BY: ___

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN,
# SOUTHERN DIVISION

James Edward White
4107 Breakwater Dr
Okemos, MI 48864

      Plaintiff

1:23-cv-01180
Jane M. Beckering
United States District Judge

v.

Michigan, State of[1]

    c/o Governor Gretchen Whitmer, P.O. Box 30013, Lansing, Michigan 48909

    c/o Dana Nessel, Attorney General, G. Mennen Williams Building, 525 W.
       Ottawa Street, P.O. Box 30212, Lansing, MI 48909

    Defendant

## A JURY TRIAL IS DEMANDED for this COMPLAINT

James E. White
4107 Breakwater Dr.
Okemos, MI 48864
(517) 381-1960
james-e-white@idearights.com
*Pro Se*

---

[1] The State, as a whole, is responsible for the herein identified violations of the United States Constitution. The following people and Michigan units contributed to these violations: Gretchen Whitmer (and staff) as Governor; Michigan State University: Judy McManaman, Amy Holda, Brian T. Quinn, Uriel B. Abt, Elizabeth M. Watza; Michigan Unemployment Insurance Agency (case 10634324 unknown staff); Unemployment Insurance Appeals Commission (AKA Michigan Compensation Appellate Commission re 17-024033-255373W): Jack F. Wheatley, Duncan A. McMillah, Lester A. Owczarski, Neal A. Young, William J. Runco; Attorneys, Judges, Administrative Law Judges, and Commissioners (subject to Governor, Legislative, Judicial, Attorney Grievance Commission, and Attorney Discipline Board sanctions and discipline): Michael J. Kelly judge in Michigan Court of Claims (re 18-000219-MZ; Kathleen Jansen, Kirsten Frank Kelly, and Thomas C. Cameron in Michigan Court of Appeals (re 349812) ; Winston A. Wheaton (ALJ) of Michigan Administrative Hearing System (re  17-024033, UIA 10634324); Wanda Stokes 30th Judicial Circuit (re 20-191-AS-C30, 20-301-AE-C30) ; Jason Hawkins Assistant Attorney General (re 20-191-AS-C30, et seq.); Fadwa A. Hammoud Solicitor General, Rebecca M. Smith Assistant Attorney General (re 20-301-AE-C30, et seq.); Gadola Michael F. Gadola, Stephen L. Borrello, Brock A. Swartzle in Michigan Court of Appeals (re 356364, 356513); Michigan Supreme Court: Bridget M. McCormack, Brian K. Zahra, David F. Viviano, Richard H. Bernstein, Elizabeth T. Clement, Megan K. Cavanaugh, Elizabeth M. Welch (re 162298, 163548, 163562)

# COMPLAINT

1. Jurisdiction: 28 U.S.C. 1331 Federal Question and 1343 Civil Rights. The laws of the State of Michigan are not at issue here, only the fact that the employees, officers, and judiciary of the State of Michigan (and thus the State of Michigan) have failed in several respects to adhere to the Constitution of the United States of America[2], the Michigan Constitution, and Michigan laws by making (uncorrected) mistakes and misreading and/or misapplying the laws of Michigan. The laws of Michigan are plainly written in English (with occasional Latin) and must be understood, executed, and enforced in English. The relevant hierarchy of generally applying "the law" from highest to lowest is understood to be as follows:

Fundamental rights and employee, lawyer, and judicial ethics[3]

Due process including law as written, clarify ambiguity, and error correction

Constitution (which references but does not define due process)

United States Laws

Michigan Constitution of 1963

Michigan Laws

Michigan Administrative Rules Authorized by Michigan Law

Federal and State Judicial Doctrine applicable to Justice

Applicable Precedent

Judicial Procedural Rules applied with Justice in mind

---

[2] Hereinafter: Constitution
[3] Incorporated via Amendment IX and others in the Constitution.

2

2. The authors of the Constitution were keenly aware of the fundamental rights of "Englishmen" (and therefore themselves too) as exemplified in the *Commentaries on the Laws of England* by William Blackstone, Esq. in 1765 and subsequent editions[4] and, in fact, in the ratification process of the Constitution it was made clear that the proposed Constitution did not "grant nor take away" the people's rights. Then the first ten amendments (known as the "Bill of Rights") to the Constitution made explicit many of the otherwise unnoted rights but also included Amendment IX (Exhibit B) particularly to forestall anyone attempting to "deny or disparage others retained by the people."

3. "All executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution" (U.S. Const. Art. VI, § 3, Exhibit B) and further, as Gretchen Whitmer (and others) affirmed, "that I will support the Constitution of the United States and the constitution of this state, and that I will faithfully discharge the duties of the office" from the Michigan oath in the Michigan Constitution (Exhibit D Art. XI § 1). *Please note that the oath requirements engage the "Officers" for 100% of the time, there is no "when asked" or "if asked" or any similar exclusion in the "Oath or Affirmation."*

4. Among the "rights" of Constitution Amendment IX (Exhibit B) and Blackstone are: a. Correction of mistakes as expeditiously as practical after discovery and notice and without undue fuss; b. Self-defense; c. Law, rule, contract, etc., in

---

[4] Hereinafter: Blackstone

3

English to be understood in plain English d. Law, rule, contract, etc., to be understood by Federal precedent when such should reasonably be applicable; e. Clear judicial, agency, etc., written decisions, opinions, judgements, etc., regarding any language disambiguation and to publish the same such that it can be nearly as readily found as applicable law, rules, etc., such publication to include the justification thereof (e.g., the case cite); f. No decision rules hidden within government agencies (including computer algorithm ones); g. No State being a more-equal "person" in litigation; h. Correct mathematics by everyone; i. Valid logic by everyone; j. Damages for violations of one's rights; k. Correct application of scientific knowledge of chemistry, physics, biology, etc. by everyone; l. Judges, agency representatives, etc., being held to, and behave consistent with, high ethical standards; m. Expect judges, etc. to honor their oaths to support the U.S. Constitution and at least their State's constitution; n. Expect judges to always bring the law (including constitutional) into all court decisions whether addressed by the litigants or not; o. Expect judges to catch invalid logic even when not caught by litigants; p. Procedure and inconsequential details not getting in the way of "Justice" (thwarting of procedure and details can [but need not] be the cause of reasonable other sanctions though not at the expense of "Justice"); q. Courts doing their job and not allowing nor themselves abusing procedure; r. Appeals in one venue being completed (even if not all options are used) before moving on to the next; s. Courts needing more information for arriving at a conclusion requesting it; t. Appeal courts, agencies, etc., always reviewing laws, rules, cites, etc., de novo,

4

and also decisions, orders, etc., for abuse of discretion and factual error whether asked to or not when they remain in dispute; u. Courts, government agencies, etc., doing their jobs and not forcing or attempting to make individuals use lawyers; v. Courts addressing in opinions, judgements, etc., reasonable arguments in court, agency, petitioner, plaintiffs, etc., filings; w. Have obvious Constitutional and/or non-law (e.g., mistake) issues considered first when their result could override results on subordinate grounds; x. Redress of harms resulting from subsequently mooted actions; y. Redress of harms by the State or its actors; z. Courts, agencies, etc., responding under threat of higher authority not escaping sanction by responding before the higher authority does; aa. Judges that are fair and impartial; bb. All communication with judges be plain and convey the same meaning to all parties; cc. Any words conveying essentially the same meaning as "legal magic words" have the same effect; dd. Have the issues raised addressed/reviewed without being sidetracked by clever presentation of confusing peripheral issues; ee. Plain language from courts; ff. Court decisions on word meanings in a contract between A and B not being automatically applied to a contract between E and F; gg. All appeals to any appropriate higher authority tolling the clock on any other avenues for appeal; hh. Timelines for rights to appeal or other action whether denied or not in a venue recommence following success in an alternative venue; ii. Common sense understanding of motivations even when they reflect badly on the apparently motivated; jj. Other rights not here enumerated as no finite list can be complete (such rights could perhaps be mined from Blackstone and other sources but still

5

would be incomplete); kk. Have courts see that public employees, lawyers, judges, etc., are appropriately disciplined for improper actions that become visible to the courts without the victims of those improper actions having to commence actions against the perpetrators of those improper actions. This list of assumed "rights" has been copied from Supreme Court Case 22-387 filed by Plaintiff and for which certiorari was unconstitutionally denied as will be separately contested in another court filing. Hereinafter the above rights individually will be referenced, but not necessarily exhaustively, as "right x," for example or collectively as "Exhibit B Amendment IX."

5. Due process begins with the legislatively written law (or contract or rules) read and understood as it was intended at the time it was written and considering what was written as a whole within the context of surrounding law including constitutions and common law (see the Blackstone quotes on pages 8-11 in Exhibit A[5]). Amazingly the *Appeals & Opinions Benchbook - Second Edition*, Michigan Judicial Institute, 2023 is in agreement (Exhibit A pages 20-23) with Blackstone and yet neither is followed by the Michigan courts, executive branch, and MSU which selectively ignore such critical words as "individual," "the Association," "however," "unless," and "or the right." Recent U.S. Supreme Court Justices and their decisions support understanding the words of the law as intended by the

---

[5] Exhibit A U.S. Supreme Court Petition for Rehearing
(Including Blackstone and Michigan Benchbook) is a follow-on to the Section II and Section III cases of this complaint. That Supreme Court case can be found at
https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22-387.html
and the appendix to the Petition contains verbatim all Michigan Court responses in those two cases.

6

legislature (or employer/union, agency rule author, etc.) is fundamental to due process as shown in Exhibit A pages 12-20.

6. The above are hereby included where appropriate without further reference into any or all of the above and the following paragraphs.

## Section I.      Math, Individual Grievance

7. In August 2017 Plaintiff/Petitioner was temporarily laid off (August 31, 2017 to October 26, 2017). In violation of contract (Exhibit K Article 21), Michigan law (Exhibit E MCL 408.473, MCL 421.27, MCL 421.48, MCL 423.211, MCL 600.6404, MCL 600.6419), and the constitutions of Michigan (Exhibit D Article I § 2, Article I § 17, Article I § 23, Article XI § 1) and the United States (Exhibit B Amendment V, Amendment IX, Amendment XIV), Plaintiff's employer, Michigan State University (MSU), ostensibly paid out Plaintiff's accrued and fully vested vacation time in order to (illegally) reduce MSU's obligatory unemployment benefit costs under Michigan law. In computing Plaintiff's vacation payout MSU made at least two mathematical errors neither of which did they ever correct. Further, in pursuing the math errors and the law violations through an individual grievance process (Exhibit E MCL 423.211; Exhibit K Purpose and Intent, Article 10) and legal processes in the courts, due process (Exhibit B Amendment V, Amendment IX, Amendment XIV) was ignored by MSU and the Michigan Courts, among other Constitutional violations. Due process requires applying the law as written (rights c, e, g, n, o, p, q, t, v, w, dd, ee) or deliberately, in writing, resolving any law or contract *ambiguities* (rights dd, ee, ff). It also requires holding "justice" above mere "procedure."

7

8. See rights a and h, mistake correction and correct math. During Plaintiff's layoff, while entering fake vacation hours for Plaintiff someone at MSU entered only 94 hours (Exhibit L's Exhibit A [page numbered 4]) rather than the 102 actually accrued (Exhibit L's Exhibit C). MSU then apparently attempted to use 94 in the following formula to get the shown wrong amount answer[6] of Exhibit L's Exhibits C and "Summary": ROUND(((($5087.39 * 12)/2080),2)* 94 = $2604.26 (wrong by $154.64 since the correct result for 94 hours is $2758.90). The correct calculation for the full 102 vacation hours is ROUND(((($5087.39 * 12)/2080),2)* 102 = $2993.70 for a total discrepancy of $389.44[6] ($2993.70 - $2604.26). Exhibit L's Exhibit H shows that MSU denied any error other than the 8 hour discrepancy which they promised to correct (Exhibit L's H4, H5, H6) but never did. Exhibit L's Exhibits F, G, and Summary show paystub data from before the layoff until a lawsuit was filed and the vacation at layoff discrepancy calculations.

9. In December, 2017 (Exhibit L's Exhibit H) Plaintiff, in accord with an MSU/APA[7] union contract (Exhibit K Purpose and Intent, Article 10) and law (Exhibit E MCL 423.211) requested that MSU explain or correct their calculation. They tried, failed, then promised an 8-hour partial correction (Exhibit L's Exhibit H) but failed to do it (Exhibit L's Exhibits G and Summary). The union chose not to pursue arbitration (Exhibit L's H3-H17). Plaintiff then filed a Small Claim (Exhibit M 4th [including

---

[6] The "ROUND" to 2 decimal places part of formula that MSU ostensibly uses was not known to Plaintiff until after retirement in 2022 where MSU calculated a correct earned vacation payout via the formula with ROUNDing included therefore the Exhibit L calculation shows a 3 cent difference.
[7] Administrative Professionals Association

cover] sheet) and MSU delayed response so they could transfer the case to the Michigan Court of Claims (CoC) on a date more than a year after the MSU payment error (Exhibit M). MSU then claimed the calculation error was not a simple error but a contract violation that was not properly grieved, the state was immune, and the claim was past the 12-month statute of limitations for the CoC notice due to the delayed date MSU moved it to the CoC (Exhibit N). The CoC (Exhibit P), ignoring much of the contract (Exhibit O 1), averred that even for math errors only the formal *union* grievance process was allowable, not the *individual* process of the contract (Exhibit K Article 10 -58) and state law (Exhibit E MCL 423.211; following federal law, Exhibit C 29 U.S.C. § 159) and supported by precedent, the MSU delayed after-12-month-to-CoC was too late in spite of law and rules explicit to transfer in MCL 600.6404(3) (Exhibit E), and what is now MCR 2.227(E)(1) via MCR 2.228(B)(2) (Exhibit F and Exhibit O 2.7). Reconsideration (Exhibit Q) was denied (Exhibit R).

10. Plaintiff very clearly showed that a vacation payout on *layoff* was *not* authorized by contract, but only would be applicable on *termination* both by the union contract and MSU policy (above and Exhibit Q Appendix of Exhibits 1-3) and that the payout was additionally a violation of law re Michigan Employment law (Exhibit E MCL 408.473) and re Michigan unemployment insurance (Exhibit E MCL 421.27, MCL 421.48 among others). And further that an MSU employee sticking with a math error could *not* be considered acting within their authority (Exhibit E MCL 600.6419(7)) thus was breaking any State immunity.

9

11. The CoC decision was appealed (Exhibit S) to the Michigan Court of Appeals (CoA) which affirmed (Exhibit T) the CoC and denied (Exhibit V) reconsideration (Exhibit U) of Plaintiff's suit for error correction on the grounds that arbitration was *required* as a step in getting an arithmetic error (which they say is a contract violation even though no calculation formula or math rules are presented in the contract) and in spite of the fact that the contract clearly makes arbitration a union option, not an individual employee option (see Exhibit K Article 10 Step 4 -83). They also ignore or wave aside that a "layoff" is not a "termination" and therefore ignore that the vacation payout payment on layoff was voluntary by MSU and outside the contract. They also insist that only the formal union grievance process be followed, individual correction requests via email in accordance with the contract (Exhibit K, Article 10 -58) and state law (Exhibit E, MCL 423.211) don't count (let alone the judge's affirmation [Exhibit D Article XI § 1] to the Constitution [Exhibit B] including Justice and many Amendment IX rights, such as h).

12. In asking the CoA for reconsideration (Exhibit U) Plaintiff presented case cites supporting individuals having a right to individually get errors/grievances corrected as the contract and state law allow, sue for constitutional issues (such as correct mathematics) not covered by contract, that individuals need not go through arbitration when the contract makes arbitration an option for the union, and that individuals can proceed to court if the union for whatever reason chooses not to go to arbitration (Exhibit U pages 3-8 in original numbering). The CoA ignored all that and simply denied reconsideration (Exhibit V).

10

13 The Michigan Supreme Court was then appealed to (Exhibit W) providing cites (page 14-16) that should make it clear that correct mathematics is essential for both Plaintiff and MSU to have "equal" protection of the laws. And again noting that "layoff" is not "termination," "arbitration" is a union, not individual, option and is *not mandatory* for either union or individual (page 23-40), arithmetic, voluntary (outside the law) MSU payments are not subject to grievance processing, that multiple remedy processes were available, not only union through arbitration, and court transfers are allowed which maintain the original filing date. The Michigan Supreme Court denied leave on the non-reason of "not persuaded" (Exhibit X) which could be presented for anything and is, in fact, in violation of the clear intent of the 1963 Michigan Constitution changes (Exhibit D Article VI § 6 vs. Michigan Constitution 1908 Article VII Sec. 7.) where a real "reason" is required for leave denials. It is also certainly in violation of the Constitution's expectation that higher courts are essential to error correction (Blackstone Exhibit A page 10 "…little courts" quote) and essential to keeping any judiciary honest and competent (the "Challenges" quote of Exhibit A page 10-11).

14. From the layoff vacation payout outside the APA contract and incorrect mathematically it should be clear that Michigan law, particularly Exhibit E MCL 408.473 and MCL 423.211, and the Constitution, particularly Exhibit B Amendment IX and Amendment XIV, are not being followed by MSU or the Michigan Courts. The Michigan judiciary has sworn/affirmed they would uphold the Michigan laws and the Constitution. The Michigan Constitution makes the

11

Governor (executive branch) responsible for enforcing compliance with the laws and constitutions (Exhibit D Article V § 8) and she was applied to (Exhibit AA) to try to get the judiciary to comply with the law or Constitutional simple arithmetic. By Michigan Constitution (Exhibit D Article VI § 25) the Governor, along with the Michigan Legislature, has some clout to get law and constitutional compliance from the Michigan judiciary. But instead of taking positive action she, a lawyer herself, chose to close ranks with an apparent lawyer aristocracy and recommend that Plaintiff get a lawyer (Exhibit BB) regardless of the cost and the lack of any assurance any lawyer would be more successful than Plaintiff already had been. A request for transparency was ignored (Exhibit CC).

15. One result of this pursuit of correct arithmetic and correct application of the laws as written is that it has become clear that the State of Michigan no longer has the "Republican Form of Government" guaranteed by the Constitution of the United States (Exhibit B) Article IV, Section 4 and that the State, by providing the title of "Attorney," may have accidentally given rise to some so anointed believing that it gives them some "Nobility" rights via the State that are denied under the Constitution (Exhibit B) Article I, Section 10.

## Section II.    Unemployment Insurance, Vacation

16. After Plaintiff's layoff commenced Plaintiff applied for Michigan Unemployment Insurance Benefits and received them as appropriate during the layoff except for the week of September 30, 2017 (Exhibit DD) for which MSU made vacation entries (Exhibit N 20th sheet CHOREYSH entries) and claimed to the Michigan

Unemployment Insurance Agency (UIA) that MSU was allocating (Plaintiff's earned and fully vested [Exhibit K Article 21, Exhibit GG CL#A1 and CL#A3 (sheets 10-11)], Exhibit GG ER#2 [sheets 18-19]) vacation time to the first two weeks of the layoff (Exhibit II). Upon notice of the denial of unemployment benefits for the week of September 30, 2017 (Exhibit DD) Plaintiff immediately examined the applicable law (Exhibit GG pages 3-5, Exhibit E MCL 421.27, MCL 421.48) then inquired as to the reasoning by the UIA (Exhibit EE bottom) and got back a mainly useless and non-specific response (Exhibit EE top). Also, in spite of the fact that the UIA system has no option for a laid off employee to state that they did not take a vacation during layoff (Exhibit FF sheet 3 and query sheet 2), the UIA accused Plaintiff of fraud[8] for applying for benefits during a "vacation." Plaintiff then quoted clear law showing that the denial was not legitimate and asked very pointedly what authorized ignoring the quoted law (Exhibit FF 4th sheet). After the UIA had no satisfactory answer Plaintiff protested the denial of benefits which then occasioned an Administrative Law Judge hearing[9].

17. At the ALJ hearing it became clear that, in spite of Exhibit D MCL 408.473 and Exhibit K Article 21 -171 and Exhibit GG CL#A1 and CL#A3 sheets 10-11 and Exhibit E MCL 421.31 first paragraph last sentence, MSU's "practice" (Exhibit HH

---

[8] The UIA later absolved Plaintiff of the fraud charge but then reraised it when Plaintiff protested the one-week benefit denial to an Administrative Law Judge (ALJ). The ALJ also (correctly) dismissed the fraud charge.

[9] It was while doing the preparation for the ALJ hearing that Plaintiff discovered the mathematical errors covered in Section I Math, Individual Grievance of this Complaint.

pages 23-24 among other pages) was to pay out any accrued vacation of the employee and claim the payout to (illegally) reduce MSU's unemployment insurance obligations (Exhibit II[10] sheet 1). The ALJ, in his decision, clearly noted that it was accrued vacation that was paid out via "unwritten practice" (Exhibit GG page 5). Ignored by the ALJ were Plaintiff's (claimant's) exhibits showing the "unwritten practice" was counter to MSU written policy (Exhibit GG CL#B1-4 [sheets 12-15]). And then, after removing a "for" cite from a basic "template" response (see Exhibit LLL sheet 6 "Compensation earned…"), the ALJ stopped his law analysis (Exhibit GG page 5-6) without considering the "However" second sentence (Exhibit E MCL 421.48(2)) that explicitly addresses earned vacation. The ALJ also ignored the fact that a similar case referred to at the ALJ hearing, transcript Exhibit HH page 30 17-012285, came to the opposite conclusion (Exhibit LLL sheet 2 "not ineligible" vs Exhibit GG sheet 2 "ineligible").

18. Plaintiff's rehearing/reconsideration request (Exhibit JJ[11]) was denied by the ALJ (Exhibit KK), again without addressing the "However" sentence, so Plaintiff appealed to the Michigan Compensation Appellate Commission (MCAC, now the Unemployment Insurance Appeals Commission [UIAC]) which, with three opportunities (Exhibit LL, Exhibit MM, Exhibit NN, Exhibit OO, Exhibit PP,

---

[10] It was the "Other Protests" sheet of this exhibit that got Plaintiff curious about the math of what had been assumed a computer-generated output for the Exhibit GG last page pay statement.
[11] The reconsideration request clearly noted: "The vacation pay was all accrued and vested before September 1 and regardless the payment ostensibly for that accrued vacation time was made on September 29 well over 14 days after accrual, hence the payment cannot make James White ineligible for unemployment for the week ending September 30."

Exhibit SS), also completely ignored the "However" sentence re earned vacation. In spite of the clear wording of the law regarding MCAC appeals (Exhibit E MCL 421.34(7) "Unless..." last sentence), and their own rules (Exhibit WW R 792.11432[12]) written per that law, the MCAC asserted an unexplained "right" to use a "no good cause" rationale[13] for the main basis of its third denial (Exhibit SS). Certainly Plaintiff disregarded the MCAC short-circuit attempt of their second denial not only on the basis of clear reading of the law (Exhibit E MCL 421.34(7)) and the MCAC rules (Exhibit WW R 792.11432) but with the firm belief that the UIAC's failure to acknowledge the "However" sentence of (Exhibit E MCL 421.48(2)), or the unwanted APA union attorney's without-asserted-reasons rehearing request (Exhibit NN), among others, as being "good cause" re timely (1-year) reopen. The timely (30 days) re rehear[14] request after the MCAC second decision was also met but ignored in the MCAC/UIAC third denial (Exhibit SS).

19. In addition to, or as part of, the MCAC's short-circuit attempt was that the MCAC did not respond with notices regarding the requests for rehearing or reopening. After nine months of hearing nothing from the MCAC Plaintiff sent a status query (Exhibit QQ) which again elicited no response so after 3 more months

---

[12] The rules (Exhibit WW R 792.11432), written per the law (Exhibit E MCL 421.34(7)) require all three option notifications yet the MCAC/UIAC only notices option (a) as shown in the "This order..." paragraph toward the bottom of Exhibit OO sheet 2 and Exhibit SS sheets 2 and sheet 4's explicit instructions whereby the MCAC/UIAC attempts to short-circuit employees into going to (expensive and time consuming) court without disturbing the MCAC/UIAC again for ignoring law or evidence.

[13] More on this in discussing the following court exhibits.

[14] Both timeframes in Exhibit E MCL 421.34(7)

Plaintiff initiated a Superintending Control case[15] in the 30th Circuit Court (Exhibit RR). When the (now) UIAC received the Superintending Control Complaint it did finally respond to Plaintiff's reopen/rehearing request (Exhibit SS) with a reopening denial on lack of "good cause" grounds. Simultaneously the UIAC also sent a "Notice of Request for Reopening" (Exhibit SS 5th sheet) but none for rehearing. The fact of the delayed "Notice..." can also be seen in the 04/27/20 entry in the FOIA acquired Exhibit TT sheet 2, Upon receiving the new denial Plaintiff appealed to the 30th Circuit Court (Exhibit UU) thus making the third denial of the UIAC "final." Per the Exhibit E MCL 421.34(7) "Unless..." last sentence no MCAC/UIAC decision is "final" until not appealed to the UIAC within 30 days or to the appropriate Circuit Court within 30 days or reopening requested within 1 year or all 30 day and 1-year time periods expire without interested party action. This participant action/inaction, not some UIAC declaration, as to what makes a UIAC decision "final" is acknowledged in the language of Exhibit MM's third sheet "This decision..." sentence. Exhibit E MCL 421.38, as the MCL 421.34 "Unless" sentenced made a plaintiff option, shows that Plaintiff's timely filing in the 30th Circuit Court made the UIAC's third, and still unresponsive to "However," denial "final" and thus eligible for Circuit Court review regarding "contrary to law," etc.

20. Plaintiff filed a brief (Exhibit VV) again presenting the Exhibit E MCL 421.48(2) "However" sentence (page 9), Exhibit E MCL 408.473 (page 9), Exhibit K Article 21

---

[15] The progress of this case will be covered in Section III Superintending Control of this current Complaint to the U.S. District Court For the Western District of Michigan, Southern Division.

-171 "layoff" not "termination" (page 10), and MSU written policy (page 10-11); the
first two being clearly "contrary to law" thus allowing Judicial reversal of the UIA,
ALJ, and UIAC; the last two exhibits being "competent, material, and substantial
evidence on the whole record" (the quoted text in this last semicolon clause being
from Exhibit E MCL 421.38). Additionally Plaintiff clearly showed that UIA
misdirection led the ALJ to put the burden of proof on Plaintiff/Claimant rather
than on MSU by using "ineligible" terminology on a "special payment" issue
(Exhibit VV page 18+).

21. The 30th Circuit Court Judge apparently not either reading or understanding
the "Unless" sentence of Exhibit E MCL 421.34 effectively declared the UIAC's
March 7, 2018 denial order "final" (let alone confusion over one year vs 30 day
deadlines) then also declared that only "good cause" was relevant to her decision
(Exhibit XX pages 3-4). The Judge explicitly quoted the UIAC Exhibit WW R
421.270 and, ignoring its "good cause shall include, but not limited to" clause and
the fact that both Exhibit E MCL 408.473 and MCL 421.48(2) trump the UIAC's
ignoring the timely rehearing request that the UIAC did not address, decreed that
no "good cause" was put forth by Plaintiff.  Simple valid logic, right i, says that
when an agency's (UIA, ALJ, UIAC/MCAC) decision is "contrary to law" (Exhibit E
MCL 421.38) there is very good cause for questioning that agency. While the Court
pointed out (Exhibit XX pages 3-4) the Michigan Constitution re judicial review of
administrative agencies (Exhibit D Article VI § 28) which mandates reconsideration
on "authorized by law" and "evidence on the whole record" the Court then ignored it

17

in favor of "limited" review (Exhibit XX pages 5) to the UIAC use of "good cause" as their own escape clause rather than justice under law.

22. Plaintiff requested reconsideration (Exhibit ZZ) which noted Exhibit E MCL 24.306 that makes clear:

> (1) …the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
>
> (a) In violation of the constitution or a statute.

23. It seems very clear that several Michigan statutes already noted have been violated by MSU (e.g., Exhibit E MCL 421.31 and MCL 408.473) and their violation has been left totally ignored by the UIA, ALJ, and MCAC/UIAC. The MCAC/UIAC in fact breaks its relevant statute (Exhibit E MCL 421.34) which, even according to their own rules (Exhibit WW R 792.11432), permits multiple efforts questioning their decisions. Violated in particular is the statute of Exhibit E MCL 421.48(2) which importantly reads:

> However, payments for a vacation or holiday, *or the right to which has irrevocably vested,* after 14 days following a vacation or holiday *shall not be considered wages or remuneration* within the meaning of this section.

24. Exhibit AAA shows the 30th Circuit Court's denial of reconsideration on the (irrelevant) MCR 302 Superintending Control grounds by simply copying the Exhibit RRR 20-191-AS-C30 reconsideration denial related to Section III Superintending Control (see below) and writing in 20-301-AE in place of the lined out 20-191-AS thus making no attempt at Justice.

18

25. Plaintiff submitted an Application for Leave to Appeal to the Michigan Court of Appeals (Exhibit BBB) reiterating the "However" sentence (page 8), MCL 408.473 (page 8), "layoff" is not "termination" (page 9+) by MSU/APA contract and MSU Policy, ALJ was befuddled among other issues on "burden of proof" (page 16+), and that "contrary to law" is "good cause" whether the UIAC declares it so or not (page 27). Additionally the 30th Circuit Court's denial of 20-301-AE-C30 on 20-191-AS-C30 Superintending Control grounds thus without costs was certainly an error in need of correction.

26. Exhibit CCC was the Michigan Court of Appeals flat denial of leave.

27. Upon Plaintiff's Reconsideration Motion (Exhibit DDD) the Michigan Constitutional requirement of Article VI § 28 for the Courts to examine whether administrative decisions were "authorized by law" (page 4) was noted as was the MCL 421.38 "contrary to law" (page 5) and the "Unless" of MCL 421.34(7) (page 5) and the "However" of MCL 421.48 (page 6+) among other repeats. Additionally it was noted that the Courts had charged Plaintiff $514.25 (Exhibit DDD page 10) for filing appeals to an MCL 421 case even though the second paragraph of Exhibit E MCL 421.31 strictly forbids such charges.

28. Exhibit EEE shows the Court of Appeals' unexplained denial of reconsideration. Plaintiff submitted an Application for Leave to Appeal to the Michigan Supreme Court (Exhibit FFF) which summarized in three questions with arguments in 18 pages the above arguments emphasizing "Unless," "However," "authorized by law,"

and "contrary to law." Further Plaintiff noted at least the Court of Appeals'

obligation to examine de novo any statutory interpretation in question (Exhibit FFF

page 6) and requested that the Supreme Court consider its obligations under

Exhibit E MCL 600.1701.

29. In reply (Exhibit GGG) to a UIA Brief in Opposition to James White's

Application for Leave to Appeal Plaintiff again rehashed the "Unless" and

"However" among others but also clearly noted that the UIAC "good cause" denial

was invalid because their own rules, quoted as "good cause" choices by the 30th

Circuit Court in Exhibit XX, included:

> g. If an interested party has been misled by incorrect information from the
> agency, the office of appeals, or the board of review.

Aside from the clear wording of the law and the Court's obligation to read and

follow it (particularly Exhibit E MCL 421.34(7)'s "Unless") Plaintiff had read (and

been "misled" by) the Exhibit WW R 792.11432 rule that implemented that "Unless"

by mandating that the UIAC notify parties of all three available "appeal" options,

not just the "circuit court" one the UIAC notice attempted to short-circuit Plaintiff

to.

30. The Michigan Supreme Court's Order denied leave on "not persuaded" grounds

(Exhibit HHH).

31. Of course Plaintiff filed a Motion for Reconsideration (Exhibit III) noting that,

since no cites or rationales had yet been provided, this might be a "case of first

impression" (page 3) as well as reiterating all the other "administrative adjudication

decisions" re law and evidence and rules via de novo and noting Exhibit E MCL

421.4 requiring an agency's rules to comply with the law. The MCAC/UIAC rule

Exhibit WW R 792.11432 requiring the three next step options notice, of course,

complies with that law but the MCAC/UIAC *secret rule* to aim for a short-circuit

that does not come back to the MCAC/UIAC does not comply.

32. The UIA (on behalf of the MCAC/UIAC) filed a Response (Exhibit JJJ) to the

Reconsideration Motion and, while citing laws and rules correctly, proceeded to

boldly state:

> But the MES Act does not permit a second rehearing requesting. Rather, it
> says that a party must file an appeal of the rehearing denial in circuit court
> within 30 days of the denial. (Exhibit JJJ page 6)

Except, of course, that is neither what the "Unless" sentence of Exhibit E MCL

421.34(7) says nor Exhibit WW R 792.11432 (which the UIA cleverly fails to cite)

which clearly shows as three valid party responses, not the "must file" to circuit

court the UIA flatly states (Exhibit JJJ page 6). The UIA further in discussing "good

cause" carefully omits the "but not limited to" of Exhibit WW R 421.270(1) and

apparently fails to understand that the law, particularly the "However" Exhibit E

MCL 421.48(2) sentence, trumps any court requirement for the listed "good causes"

even though the UIA's fifth bullet re "good cause" on page 7 (quoted from Exhibit

WW R 421.270(1)(g)) must apply given the Exhibit WW R 792.11432 published

MCAC rule.

33. The UIA goes on to misread (page 8) the Exhibit E MCL 421.48(1), presumably

the UIAC's (2), "of less than full time *work*" (*Plaintiff emphasis added*) to include 0

(zero) hours even though that clearly is not the intended meaning and is not

compatible with the rest of the complex MCL 421 Michigan Employment Security

(MES) Act including its MCL 421.48(2) "However" sentence and its MCL 421.27(1)

"for which." The following quote from Exhibit JJJ (page 9) is the State's entire

discussion re MCL 421.48(2):

> The second sentence of § 48(2) provides that "payments for a vacation or
> holiday, *or the right to which has irrevocably vested (Plaintiff's
> emphasis in this Complaint)*, after 14 days *following a vacation or
> holiday* shall not be considered wages or remuneration within the meaning
> of this section." MCL 421.48(2) ([UIA] emphasis added). The plain language
> of this section contemplates that vacation pay covering *a vacation or holiday
> already having occurred* do not constitute remuneration. But this does not
> apply here because White has not alleged, and the record does not support,
> that the payments relate to a completed vacation or holiday.
>
> Simply put, the section does not stand for the proposition that payments for
> accrued vacation time an employee had amassed would not be remuneration
> as White contends. *In fact, the first sentence in § 48(2) flatly rejects
> this position by defining vacation pay paid out as continuing wages
> or consideration related to a separation as remuneration.* MCL
> 421.48(2). (*Plaintiff's emphasis*)

34. The UIA cleverly ignores the "However" beginning the second sentence of MCL

421.48(2) which largely "flatly rejects" the first sentence's "vacation" and which the

Michigan legislature clearly intended to make the second sentence's "vacation"

references have priority over those of the first sentence. The UIA's "In fact..."

sentence completely misconstrues the law's:

> All amounts paid to a claimant by an employing unit or former employing
> unit ... as the result of the separation ...

The earned vacation was not a "result of the separation" it was the result of prior

weeks worked and was "related" (the UIA's word) to the layoff by the artificial

efforts of MSU. The UIA also mistakenly appears to insist the "after 14 days" must

only apply to a real vacation, completely ignoring (rendering nugatory) *"or the right to which has irrevocably vested,"* while simultaneously asserting that MSU's "payments [do not] relate to a completed vacation or holiday" which neither side "alleged" though MSU (illegally) "allocated" with the intent to reduce their unemployment obligations. True, the payments don't relate to a "vacation." Instead, as Plaintiff claims, they relate to a "vacation" "right to which has irrevocably vested" and were indeed made "after 14 days" of the vesting (as clearly stated in Plaintiff's ALJ reconsideration request, Exhibit JJ, and subsequently) hence, by the MCL 421.48(2) second sentence, "shall not be considered wages or remuneration."

The Michigan Supreme Court's denial (Exhibit KKK) did not take its de novo opportunity and again opted for a meaningless "not persuaded" escape.

35. Plaintiff's rights a, c, d, e, f, g, i, l, m, n, o, p, q, r, t, u, v, w, aa, bb, cc, dd, ee, gg, and ii at least have been violated and in particular "due process" rights under at least Amendment XIV and Amendment IX of the Constitution of the United States (Exhibit B) which require reading and understanding the law first. Proper reading of the law is of the essence in due process as incorporated in the beginning paragraphs of this complaint re Blackstone[16] and the Michigan *Appeals & Opinions Benchbook[17],* among others. Also among other things ignored by the Michigan Courts are the Michigan Constitution (Exhibit D) items of Article I § 1, Article I § 2,

---

[16] Exhibit A page 9 for example: "One part of a statute must be so construed by another, that the whole may (if possible) stand"

[17] Exhibit A page 22 for example: "Courts must avoid an interpretation that would render any part of the statute surplusage or nugatory."

Article I § 17, Article I § 23, Article VI § 6, Article VI § 28, and Article XI § 1. Of particular note "not persuaded" of the Michigan Supreme Court is not in compliance with the "reason" Article VI § 6 change to the Michigan Constitution for 1963 (Exhibit D) over the Michigan Constitution 1908 Article VII Sec. 7. Given that the Michigan Legislature writes the law, that the Executive branch (including UIA, ALJ, UIAC) is to implement and enforce it, and that the Judicial branch is to adjudicate per the laws and constitutions in order that there be a "Republican Form of Government" in Michigan, Article IV, Section 4 of the Constitution of the United States (Exhibit B) has been breached by the State of Michigan via its various employees not the least of which is the Governor. As things stand, the UIA, ALJ, and UIAC at least can do whatever they want re at least the "Unless" and "However" sentences of the law arbitrarily for any case and there is no definitive "English" "interpretation" available for anyone to prove them wrong either way. The Michigan Courts have not done their Federal, pre-Constitution, and by Amendment IX inclusion, "error correcting" duty (at least de novo and right t).

36. Plaintiff appealed further, including a reconsideration request, to the U.S. Supreme Court (Exhibit A) which did not decide the case but simply denied certiorari thus abdicating their own Constitutional responsibility to provide the checks and balances on errant States[18]. It should be observed that the MSU, UIAC, and UIA all chose *not to try* (Exhibit YY[19]) to justify their decisions to the U.S.

---

[18] To be covered in a separate case filing in the District of Columbia.
[19] "Waiver of right of respondent..." on Nov 19, 2022 and Dec 01 2022.

Supreme Court presumably understanding the probability the Supreme Court
would take the easy out (certiorari denial) and also under the mistaken theory that
that was the final avenue of "appeal" for Plaintiff and disregarding that Michigan
(via state employee and judiciary acts) was violating the Constitution for which
Plaintiff has a legitimate right to petition the Federal Courts for redress. Hence this
Complaint.

## Section III. Superintending Control

38. As mentioned in Section II Unemployment Insurance, Vacation above and
shown in Exhibit RR a Plaintiff's Superintending Control Complaint
to 30th Circuit Court had to be filed after the MCAC/UIAC failed to respond to a
timely 30-day rehearing request (Exhibit PP) and a simultaneously filed timely 1-
year reopen request (also Exhibit PP) as allowed by the "Unless" sentence of Exhibit
E MCL 421.34(7) and the MCAC rule Exhibit WW R 792.11432(1) subsections (b)
and (c) respectively.

39. The MCAC/UIAC responded with two things. The first was *the decision* that the
Superintending Control was filed to kick loose (Exhibit SS) and the second was an
attempt to get Plaintiff to stipulate against costs occasioned by the MCAC delay
(see last 4 "exhibit" pages of Exhibit QQQ discussed below).

The 30th Circuit Court denied the Superintending Control request (Exhibit MMM)
illogically on the ground that the Section I Math, Individual Grievance above, a

25

parallel but wholly different issue and court case series arising from a related set of events, had an appeal in existence.

40. Plaintiff filed a Motion to Reverse or Correct the decision (Exhibit NNN) since the decision was based on the wrong case and not on the fact that the MCAC was either procrastinating or intentionally not doing its duty under Exhibit E MCL 421.34(7)'s "Unless" sentence. Plaintiff also noted that a significant concern was to preserve the right to costs occasioned by the necessity of the Superintending Control Complaint.

41. The UIAC responded (Exhibit PPP) to the Motion to Reverse or Correct with an answer that misconstrued cause and effect dates with the clear intent to absolve themselves of their delay and to escape costs.

42. Plaintiff replied with an Opposing Brief (Exhibit QQQ) including an appendix which included documentation of the UIAC effort to get Plaintiff to stipulate against costs (last 4 "exhibit" pages of Exhibit QQQ). The Plaintiff's Brief laid out the dates in proper order showing that Plaintiff was taking steps in a precise order permitted by law, including by the "Unless" of Exhibit E MCL 421.34(7)). In particular was that Plaintiff had no choice but to file the Superintending Control Complaint because Plaintiff's Reopen/Rehear timely appeal sent to the MCAC was still awaiting a decision after more than a year. Without that decision from the UIAC Plaintiff could not make *the decision* "final" via an appeal filing to the 30th Circuit Court.

26

43. The 30th Circuit Court denied (Exhibit RRR) the reconsideration, completely ignoring the date sequence and the Costs. The Court again mistakenly declares that *the UIAC makes its decisions final* when the law allows no such thing; it is action or inaction on the part of the parties that result in a UIAC decision becoming final per the "Unless" sentence of Exhibit E MCL 421.34(7). The Court also notes that Plaintiff had filed an appeal to the 30th Circuit Court but failed to understand that that could not have happened without *the decision* kicked loose by the specter of the Court being hung over the UIAC by the Superintending Control filing.

44. Plaintiff filed an Application for Leave to Appeal (Exhibit SSS) to the Michigan Court of Appeals again reiterating the "Unless" sentence (page 6+), noting the fact that the Superintending Control filing had indeed gotten the UIAC to issue the needed decision (page 7-8) for Plaintiff to make "final," and again asking for costs (page 8+).

45. The UIAC filed a Brief in Opposition (Exhibit TTT) to the Application for Leave to Appeal without ever addressing "Unless" or their own Exhibit WW R 792.11432 rule but instead insisting their (short-circuit) process of bypassing the "Unless" sentence and rule made their insistence that costs were not due to Plaintiff correct because the UIAC's position was therefore not frivolous even though Plaintiff, in getting a UIAC decision issued, had prevailed with the purpose of the Superintending Control Complaint.

46. Plaintiff's Reply (Exhibit UUU) to the UIAC Brief in Opposition explicitly noted the Michigan Constitution Exhibit D Article VI § 13 re Circuit Court

27

Superintending Control, presented a clear history including noting that the UIAC did at last issue a decision, that Plaintiff went from being unable to appeal to the Circuit Court to being able to as the issue of *the decision* provided, that state law via Exhibit E MCL 600.2421c among others did authorize costs to Plaintiff, and that the "frivolous" of Exhibit E MCL 600.2591 was met because the UIAC did act as though the 30th Circuit Court had/would order the UIAC to issue a decision thus Plaintiff "prevailed."

47. The Michigan Court of Appeals denied Leave (Exhibit VVV) without explanation.

48. A Reconsideration Motion (Exhibit WWW) for the Denial of Leave was filed by Plaintiff in the Michigan Court of Appeals again emphasizing the "Unless" sentence that defines how "final" occurs for UIAC decisions, the arbitrariness of the UIAC shirking its duty and ignoring its own rules then defeating Superintending Control by beating the Court with a response, the Court of Appeals not doing a de novo law review and failing to provide any check on UIAC arbitrariness, and noting that with UIAC rehear/reopen requests pending Plaintiff had no "appeal" to the Circuit Court available until *the decision* elicited by the Superintending Control filing.

49. The UIAC, in their Response to the Motion for Reconsideration (Exhibit XXX), ignored the arbitrariness of the UIAC process and the fact that the Court of Appeals denying a leave to appeal is not a ruling on the law.

50. The Michigan Court of Appeals again denied leave without explanation. In short, the Michigan Court of Appeals is permitting the UIAC to follow whatever outside the law process they want without the Court of Appeals clearly explaining to them exactly what the "Unless" law (Exhibit E MCL 421.34(7)) allows as is clearly shown by the UIAC's own rules (Exhibit WW R 792.11432). I.e., State denial of at least rights c, e, and f.

51. Plaintiff escalated the appeal once again, up to the Michigan Supreme Court (Exhibit ZZZ). Errors of the 30th Circuit Court were pointed out as was the Court of Appeals' failures to address the meaning of the plain English of the law and the UIAC's rules. Also that costs should not be denied when the Plaintiff "prevailed" in getting UIAC action.

52. Exhibit AAAA is the UIA's Brief in Opposition to the Leave to Appeal Application to the Michigan Supreme Court. While it carefully includes Exhibit E MCL 421.34(7), MCL 421.38(1), MCL 600.2421c(1), and MCL 600.2591 and some rules it carefully omits the rule Exhibit WW R 792.11432 which shows the three options the UIAC was required by the "Unless" of MCL 421.34(7) to provide notice of to Plaintiff. The UIAC asserts that because it (incorrectly) limited its notice to only a party's right to appeal to a Circuit Court that Plaintiff was required to do so to keep the case alive. Plaintiff was very aware that the "Unless" of MCL 421.34(7) and the three options of R 792.11432 also provided for parties to ask the UIAC to rehear or reopen and Plaintiff did both of those in timely fashion. The UIAC notes on page 3 of its Brief (Exhibit AAAA) that Plaintiff's reopen/rehear requests were

29

"pending" but offers no reason why the "pending" had continued for over a year without even a Notice of Request for Reopening. Also omitted is the fact that the UIAC did not respond to the rehearing request but only the reopen one for which they could simply state "good cause" was not demonstrated thus sidestepping the little issue of the "However" sentence of MCL 421.48(2).

53. Plaintiff's Exhibit BBBB rehashes the "However," "Unless," 30th Circuit Court errors, "final," R 792.11432 , "*for* a week," etc., issues and explicitly shows with activity dates that the UIAC stonewalled after Plaintiff's March 6, 2019 rehearing request. The stonewalling was stopped after Plaintiff's Superintending Control Complaint on March 19, 2020. Plaintiff also noted that by precedent "[a] court 'by definition **abuses its discretion** when it makes an error of law.'" Errors of law re the plain English of "However," "Unless," and others occur throughout the proceedings of this case and the courts that are expected to do de novo review of the law have failed to do so in a way that can be seen/followed into the future (at least right e). "Costs" and "prevailing" issues are also rehashed.

54. The Michigan Supreme Court denied the Application for Leave to Appeal with "not persuaded" (Exhibit CCCC).

55. Of course Plaintiff asked for reconsideration (Exhibit DDDD) again. This time the Supreme Court was requested to treat the "However" and "Unless" and "final," etc., as a "case of first impression" since the UIAC and the Courts had provided no de novo analysis whatsoever of the law that provided any interpretation for Plaintiff or future readers.

56. The UIAC again responded (Exhibit EEEE) that Plaintiff was representing already decided issues even though none of them had actually been addressed. The need for "first impression" was casually ignored presumably because the Court's ignoring defining a clear interpretation (or misinterpretation) of the law would permit the UIAC to continue making arbitrary decisions unimpeded.

57. And the Michigan Supreme Court, of course, denied again on "not persuaded" grounds (Exhibit FFFF). If not them, then who brings order to enforcement of the enacted law? Who insists that "However" and "Unless" mean what they are understood to mean in plain English?

58. Superintending Control and Costs are intentionally built into the law and the rules as mechanisms to keep administrative agencies, and even lower courts, in line with constitutions and enacted legislation. By permitting the UIA, ALJ, and UIAC to arbitrarily decide "irrevocably vested" vacation time payments sometimes do and sometimes don't, whatever they choose at the time, count as remuneration for purposes of reducing unemployment benefit payments is not "law," it's abuse of power. The denial of Superintending Control, in this case, is somewhat moot due to the late fulfilling of the UIAC's decision obligation, but the denial (or ignoring) of Costs erroneously absolves the state and state employees from the harassment that they have put their public victim through thus encouraging them to continue doing it to others. Constitution Amendment IX and/or Amendment XIV rights a, c, e, g, I, l, m, n, o, p, q, r, s, t, v, w, z, aa, cc, dd, ee, gg, ii have all likely been violated by the

Michigan staff and judiciary in the handling of the Superintending Control
Complaint and its subsequent appeals.

59. The case, along with the Section II Unemployment Insurance, Vacation case,
were appealed to the United States Supreme Court but were denied certiorari
(Exhibit YY) on initial petition and on reconsideration (Exhibit A). The U.S.
Supreme Court by its denials of certiorari has itself violated the clear intent of the
Constitution Article 3, Section 2 "[i]n all cases ... in which a State shall be a Party,
the Supreme Court shall have original Jurisdiction." The Supreme Court effectively
*must* take a State's-citizen-vs-the-State case and actively decide it otherwise, as the
framers knew, States and their courts if not their legislators would have inadequate
checks and balances. This became totally obvious during the Jim Crow era and is
still very much in evidence today. In the present case for sure, the Michigan Courts
and the State's lawyers "know" that the probability of U.S. Supreme Court
certiorari is so low they need not even try to justify themselves (see the previously
noted Exhibit YY). Without higher courts always providing error correction
(Blackstone Exhibit A page 10 "...little courts" quote) even courts are likely to go off
track and assume more power than they are constitutionally allowed.

## Section IV.   Conclusion

60. From Federalist No. 15, December 1, 1787 by Alexander Hamilton to the People
of the State of New York:

> ...there will be found a kind of eccentric tendency in the subordinate or
> inferior orbs, by the operation of which there will be a perpetual effort in
> each to fly off from the common centre. This tendency is not difficult to be

accounted for. It has its origin in the love of power. Power controlled or abridged is almost always the rival and enemy of that power by which it is controlled or abridged. This simple proposition will teach us *how little reason there is to expect,* that the persons intrusted with the administration of the affairs of the particular members of a confederacy will at all times be ready, with perfect good-humor, and an unbiased regard to the public weal, to execute the resolutions or decrees of the general authority. The reverse of this results from the constitution of human nature. (*Plaintiff's emphasis*)

61. The following are from Antonin Scalia and James Madison re Constitutional law referring to federal and state legislatures, executive branches, and their judiciaries:

Discussing "considerations particularly applicable to the federal system of America," [James Madison in Federalist No. 51, February 6, 1788] wrote:

In a single republic, all the power surrendered by the people is submitted to the administration of a single government; and the usurpations are guarded against by a division of the government into distinct and separate departments. In the compound republic of America, the power surrendered by the people is first divided between two distinct governments, and then the portion allotted to each subdivided among distinct and separate departments. Hence a double security arises to the rights of the people. The different governments will control each other, at the same time that each will be controlled by itself.[20]

Those who seek to protect individual liberty ignore threats to this constitutional structure at their peril. Antonin Scalia, Foreword: *The Importance of Structure in Constitutional Interpretation*, Notre Dame L. Rev. 1417, 1418-19 (2008).

62. In short, at least the pre-Constitution rights of the people to have laws read and understood in English, and as carried over in at least Constitution (Exhibit B) Amendment IX and Amendment XIV, have been shamelessly violated by employees,

---

[20] The current Supreme Court Case Selections Act of 1988 (28 U.S.C. § 1257), and perhaps prior similar acts, leaves us with only a semblance or husk of this cross control of states vs. federal particularly when allowing discretionary denial of certiorari review in the case of an individual against a State. The "may" of that act is probably appropriate in general but U.S. Supreme Court denial of certiorari without stating clear reasons in State-citizen vs State cases may exceed the Constitution's intent in structuring governance at two levels.

the judiciary, and elected officials of the State of Michigan in the above three cases. It is well past time to put a stop to that misbehavior and that can only be done through the Federal courts and the people, hence this demand for a Federal Jury trial.

## Section V.    Relief Demanded

63. Justice.

64. Costs that have been paid by Plaintiff during the long course of appeals.

65. Damages for all pain, suffering, effort, etc., occasioned by over 3000 hours of effort to get the State of Michigan to respond to Plaintiff's original questions of Exhibit FF last page, etc., and correction of the simple arithmetic of Exhibit L's Exhibits page 2 Summary.

66. Punitive damages of sufficiency and character to discourage the State of Michigan and its employees, judiciary, and officers from further abrogation of their Constitutional and other Just obligations for a long time to come.

67. Remand responsibility for actions against State of Michigan actors to the appropriate units of the Michigan government and follow-up to ensure that they are adequate and happen.

68. An order that the U.S. government and/or the Michigan government commence a thorough investigation of the UIA, ALJ, and MCAC/UIAC and particularly MSU cases and correct all errors found back at least 15 years.

69. Any and all other relief to which Plaintiff is entitled.

---

Respectfully submitted,

*/s/ James E. White*  11/3/2023          Signed: _James E. White_ Date: 11/2/23
4107 Breakwater Dr.
Okemos, MI 48864
(517) 381-1960
james-e-white@idearights.com
*Pro Se*

*(emphasis added and/or **emphasis added** unless otherwise noted in exhibit excerpts)*

# EXHIBITS